IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


AULTMAN, TYNER, & RUFFIN, LTD.                                    PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 2:10cv223KS-MTP

CAPITAL RUBBER & SPECIALTY CO., INC., ET AL                      DEFENDANTS


## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Stay and/or to Dismiss or in the

Alternative to Transfer **[#3]** filed on behalf of the defendant, Capital Rubber & Speciality

Co., Inc. ("CR&S").  The court, having reviewed the motion, the response, the pleadings

and exhibits on file, the briefs of counsel, the authorities cited and being fully advised in

the premises finds that the motion is not well taken and should be denied.  The court

specifically finds as follows.


## BACKGROUND

This litigation is a suit for breach of contract, wherein the defendant Capital

Rubber & Specialty Co., Inc. allegedly breached its agreement to pay to Aultman Tyner

attorneys fees and out of pocket expenses in relation to representation in asbestos

litigation.  CR&S is a Louisiana corporation not licensed to conduct business in the State

of Mississippi.  Aultman Tyner & Ruffin, Ltd. ("Aultman, Tyner") is a licensed Mississippi

law firm.  Aultman, Tyner initially filed suit in the Circuit Court of Forrest County,

Mississippi.  In response to the state suit, CR&S filed a Motion to Stay or to Dismiss or in

the Alternative to Transfer to challenge personal jurisdiction and to raise the issue with the inconvenience of the forum.

After the issues were briefed the State Court received evidence in the form of affidavits and counter-affidavits and heard oral argument on the motion to dismiss on June 25, 2010.  Circuit Judge Robert Helfrich took the matter under advisement after the hearing.  Aultman, Tyner asserts that no discovery, or other action has occurred in the state court case and it remains pending in the Circuit Court of Forrest County as the parties await Judge Helfrich's decision on the Motion to Dismiss.

Aultman Tyner contends that it has an urgent need to prosecute this litigation and recover the monies owed to it by CR&S, as the Plaintiff has no assurances CR&S will be solvent in the future.  Thus, on September 10, 2010, Aultman Tyner filed the Complaint in the instant matter asserting diversity jurisdiction.  The Complaint in the instant matter is identical to the Amended Complaint filed in State Court.  CR&S contends that by bringing this second action, Aultman, Tyner seeks nothing less than an end-run around its own choice of the original forum – in effect attempting an impermissible removal of its own State Court case.

Aultman, Tyner counters that it has offered to consider an alternative forum if CR&S will bond the amount of the Plaintiff's demand.  CR&S has to date refused to do so, thus, according to Aultman, Tyner leaving it  no recourse but to file a second suit, in hopes of moving this litigation forward.  CR&S has now filed a Motion to Stay or to Dismiss, or in the Alternative to Transfer this matter to Louisiana in this litigation.

**ABSTENTION**

CR&S contends that pursuant to the dictates of the United States Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817-19, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), considerations of "wise judicial Administration" provide discretion for the federal court to abstain or stay exercise of its jurisdiction when there are "parallel" state court proceedings.  Indeed, the concept rests on the idea of promoting a "conservation of judicial resources," avoiding duplicative litigation, and discouraging forum shopping.  *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246, and *St. Paul Insurance Company v. Trejo*, 39 F.3d 585 (5th Cir. 1994).  The Fifth Circuit has held that the two cases are considered parallel if they involve the same parties and the same issues. *Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 538-41 (5th Cir.2002) (overruled on other grounds, *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009)).

Both parties agree that the appropriate abstention standards for the court to apply are set forth in *Colorado River* as refined in *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  *See also Safety Nat. Cas. Corp. v. Bristol-Myers Squibb Co.* 214 F.3d 562, 564 (5th Cir. 2000).  Under the *Colorado River* doctrine, this court may abstain from hearing a case in only "exceptional circumstances."  *See Kelly Inv., Inc. v. Cont'l Common Corp.,* 315 F.3d 494, 497 (5th Cir.2002).

Further, abdication of the obligation to decide cases under the doctrine of abstention can be justified in "exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest," such as considerations of

"proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (citations and internal quotations omitted). "Unless there is a legitimate reason to abstain, federal courts 'cannot abdicate their authority or duty in any case in favor of another jurisdiction.'" *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir.2001) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)).

There are six factors which have been developed from *Colorado River* and its progeny to assist the court in determining if exceptional circumstances exist so as to allow the court to abstain from hearing a particular action. Those six factors are: (1) assumption by either state or federal court over a res; (2) relative inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent forum; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Stewart v. Western Heritage Ins. Co.* 438 F.3d 488, 491 (5th Cir. 2006); *see Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236; *Moses H. Cone*, 460 U.S. at 23, 103 S.Ct. 927.

However, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. 927; Further, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236

4

CS&R asserts that the first two *Colorado River* factors do not apply (there is no property attached in either court, and both the federal and state courts in Mississippi are equally convenient), but all other factors favor a stay.  However, as Aultman, Tyner points out in *Stewart v. Western Heritage Ins. Co.*, 438 F.3d 488 (5th Cir. 2006) the Fifth Circuit held that a district court should not have abstained from hearing a cause of  action brought by the insured's bankrupt sole shareholder against insurers for its breach of contract and bad faith failure to pay, notwithstanding pendency of parallel state court action commenced by the bankruptcy trustee.  In doing so, the Court reviewed the *Colorado River* test and noted that neither the state nor federal court had assumed jurisdiction over any res.  *Id.* at 492.

Contrary to CR&S's argument however, the Court rejected the contention that the absence of this factor is "a neutral item, of no weight in the scales" and determined it in fact supported exercising federal jurisdiction.  *Id.* (citing *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191 (5th  Cir. 1988); and *Murphy v. Uncle Ben's Inc.*, 168 F.3d 734, 738 (5th Cir. 1999)).  Further, with regards to the second factor, when courts are in the same geographical locations, the inconvenience factors weighs against abstention.  *Id.* (citing *Murphy*, 168 F.3d at 738).  Therefore, a consideration of the first two *Colorado River* factors counsel against abstention.

As to factor three, CR&S argues that by not granting a stay, duplicative, piecemeal litigation would surely result as Aultman, Tyner could push or pull against progress in one case or the other depending on where they felt they could obtain the most advantageous forum.  Thus, CR&S claims that it would force it to defend two identical cases at the same time.  However, in *Stewart,* the Court noted that there was some potential for piecemeal

litigating as the state court was the only forum for hearing certain claims but went on to conclude that a plea of *res judicata* after the completion of one suit could eliminate the remaining issues and the problem of an inconsistent judgment.  438 F.3d at 492.

In *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 138 (5th Cir. 1999), cited in *Stewart*, the Court reviewed this factor and noted that cases with no more than one plaintiff, one defendant, and one issue did not involve piecemeal litigation and determined that parallel litigation was duplicative, not piecemeal and that duplicative litigation was not a factor to be considered in an abstention determination.  *Id*. at 738 (citing *Evanston* 844 F.2d at 1192 (citing *Colorado Riveri*, 424 U.S. at 817.  Indeed, the *Murphy* court went on to state that [t]he only bar to dual prosecution is dismissal due to *res judicata*." *Id*.  Thus, as in *Murphy*, this factor weighs against abstention.

Regarding the fourth factor, the inquiry is "how much progress has been made in the two actions." *Stewart* 438 F.3d at 492 (citing *Murphy*, 168 F.3d at 738).  CR&S asserts that jurisdiction was obviously obtained more than six months earlier in the State Court and that the dispositive motion to dismiss has been fully briefed, argued and taken under advisement by Judge Helfrich.  Aultman, Tyner points out that no discovery has occurred in either case and concurs with CR&S that no ruling has been made on CR&S's motion in the state court case.  Indeed, both cases seem to be in much the same posture at this time.  This factor is neutral to an abstention determination.

With regard to the fifth factor, CR&S points out correctly that this is a diversity case in which Mississippi law will apply.  There is no Federal cause of action and federal law is not an issue.  Aultman, Tyner responds that this factor should be viewed as neutral because CR&S has not shown that any "rare circumstances" exist to prevent this court

6

from entertaining jurisdiction.  While Aultman, Tyner's argument on this factor is less than

pellucid, the court agrees that CR&S has not shown any "exceptional circumstances"

regarding the lack of application of federal law that would counsel in favor of abstention.

Thus, this factor is also neutral.

As to factor six, CR&S argues that the State Court is perfectly capable of disposing

of this case, as is evidenced by Aultman, Tyner initially filing in that forum.  Aultman,

Tyner counters that  while the state court can adequately adjudicate this case, it has to

date failed to rule on CR&S's Motion which it took under advisement, effectively

preempting any further action in this matter.  This court does find it perplexing as to why

the state court has not ruled on the pending motion before it but certainly does not

question the integrity of that court.  Further, the concerns and case loads of that court are

beyond the purview of this court and this court has no intention of second guessing,

interfering with or criticizing that court.   However, in the balancing issue before the court,

this factor must be viewed as neutral.

Concluding that the first three *Colorado River* factors counsel against abstention

and that the last three are neutral, does not end the matter, however.  As previously

stated, this court is not to merely mechanically weigh the listed factors but must balance

them in an effort to comply with the higher courts' admonitions not to shirk jurisdiction over

cases properly before it.

In light of the balancing requirement, CR&S asserts that the most telling

requirement of the analysis is the consideration which the *Moses H. Cone* Court called

the vexatious or reactive nature of the second litigation.  CR&S argues that just as the

Plaintiff in *Allied Machinery Service, Inc. v. Caterpillar Inc.*, 841 F.Supp. 406 (S.D. Fla.

7

1993) decided to try a second bite at the apple when the defendant filed a dispositive motion in the State court, Aultman Tyner has turned to this Court only after Judge Helfrich took CR&S' motion to dismiss under advisement. CR&S continues that whatever its actual motivation, the timing of Aultman Tyner's second suit creates the unmistakable impression of blatant forum-shopping, waste of judicial resources and unfair prejudice to the Defendant who must defend on two fronts.

Aultman Tyner responds that it is simply attempting to proceed with this litigation, under the threat of being unable to collect a judgment from a potentially non-solvent defendant. It asserts that unlike the facts in *Allied Machinery* cited by CR&S, Aultman Tyner did not file this suit to avoid a determination of CR&S's motion. In fact, Aultman Tyner contends that the opposite is true; i.e., Aultman Tyner seeks a determination of the appropriate forum so it may prosecute its case.

This court concludes that after carefully analyzing and balancing the relevant factors set forth in *Colorado River* and its progeny that abstention is not warranted. CR&S has not shown that exceptional circumstances exist which would warrant this court declining to exercise jurisdiction over this case.

**PERSONAL JURISDICTION**

CR&S next attacks this court's personal jurisdiction over it. "The party invoking the jurisdiction of a federal court bears the burden of establishing the court's jurisdiction over a nonresident defendant." *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 332 (5th Cir. 1982), *cert. denied* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983). When the Court does not rely on an evidentiary hearing but instead decides the motion on the basis

of pleadings and exhibits on file, the party urging jurisdiction is only required to present a

*prima facie* case of personal jurisdiction.  *See Brown v. Flowers Industries, Inc., supra;*

*DeMelo v. Toche Marine Inc.*, 711 F.2d 1260, 1270-71, (5th Cir. 1983), and *Thompson v.*

*Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

> The allegations of the complaint except insofar as controverted by opposing
> affidavits must be taken as true, and all conflicts in the facts must be
> resolved in favor of the plaintiffs for purposes of determining whether a
> *prima facie* case for personal jurisdiction has been established.

*Thompson v. Chrysler Motors Corp.*, 755 F.2d at 1165, quoting *DeMelo v. Toche Marine*

*Inc.*, 711 F.2d at 1270-71.

"Moreover all conflicts in the facts alleged in the opposing affidavits 'must be

resolved in plaintiff's favor for purposes of determining whether a *prima facie* case for *in*

*personam* jurisdiction has been established.'"  *DeMelo v. Toche Marine Inc.*, 711 F.2d at

1270, (quoting *Brown v. Flowers Industries, Inc.*, 688 F.2d at 333, quoting *United States*

*Ry. Equipment Company v. Port Huron and Detroit R.R.*, 495 F.2d 1127, 1128 (7th Cir.

1974)).

The Fifth Circuit has held that "the concept of personal jurisdiction comprises two

distinct components: amenability to jurisdiction and service of process."  *DeMelo*, 711 F.2d

at 1264 (other citations omitted).  Further "amenability to jurisdiction means that a

defendant is within the substantive reach of a forum's jurisdiction under applicable law.

Service of process is simply the physical means by which that jurisdiction is asserted."  *Id.*

A nonresident defendant is subject to the personal jurisdiction of a federal court

sitting in diversity to the same extent a state court sitting in the state where the federal

court sits would have.  *See, Brown v. Flowers Industries Inc.*, 688 F.2d at 331.  For

9

diversity purposes, a state standard of amenability to jurisdiction is applied based on a finding as to whether or not the state court would have had jurisdiction.  To determine jurisdiction under the state standard, the court must find that the state's long-arm statute, as interpreted by the courts of that state, applies.  *DeMelo*, 711 F.2d at 1265.  The Court must then determine that the application of the state long-arm statute in the particular case facing the court comports with the due process requirements of the 14th Amendment to the U.S. Constitution.  *Brown v. Flowers Industries Inc.*, 688 F.2d at 331-32.

As stated, there are two components to personal jurisdiction.  The service of process requirement and the amenability to jurisdiction.  CR&S has not challenged the actual physical service of process at this stage but instead by is motion challenges the amenability to the jurisdiction of this court pursuant to the service of process under the Mississippi long-arm statute.  The Mississippi statute reads in pertinent part

> Any non resident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.  Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure.

Miss. Code Ann. § 13-3-57.

Section 13-3-57 is applicable to three types of nonresident defendants.  Those are, by the terms of the statute, (1) nonresidents who make a contract with a resident of the state to be performed in whole or in part within the state; (2) any nonresident who commits a tort in whole or in part in the state against a resident or a nonresident; (3) and

nonresidents who are "doing business" within the state.  *See, Smith v. Temco, Inc.*, 252 So.2d 212 (Miss. 1971).  Only the contract and doing business prongs are relevant to this case.

### The Contract Prong

Under the contract prong of the Mississippi long-arm statute a nonresident defendant must make a contract with a <u>resident</u> of Mississippi to be amenable to process. CR&S is not a resident of Mississippi while Aultman Tyner is.  CR&S alleges that I has never contracted with Aultman Tyner.  Instead, it argues that the contract was between Aultman Tyner and The Travelers, CR&S's liability insurance carrier, who chose, retained and paid Aultman Tyner.  Further, CR&S contends that the contract with Aultman Tyner was through Aultman Tyner's Louisiana office, thus, according to CR&S any contract which existed with CR&S or tort that was committed by CR&S (both of which are denied), happened in Louisiana.  However, the facts show that Aultman Tyner is a Mississippi corporation which operates an office in Louisiana.

While this case involves monies owed by CR&S, Aultman Tyner argues that the history of its involvement with Aultman Tyner also involves its sister company Gulf Belting & Gasket Co., Inc. ("Gulf Belting").  Gulf Belting and CR&S both have used the same attorney and registered agent for service of process, Ernest E. Barrow III and both were owned by Ed Hardilick, grandfather to Todd Bourgeois.  Both entities have had the same president, Todd Bourgeois.

During the early 1990s, Ernest Barrow, father of Ernest Barrow, III, undertook the effort to obtain new counsel for Gulf Belting.  Mr. Barrow met with Thomas W. Tyner, a partner of Aultman Tyner in Hattiesburg, Mississippi to discuss the representation.  A

representative of Gulf Belting's insurance company, Gulf Insurance Co. was also present. After which, Aultman Tyner handled cases for Gulf Belting primarily in Mississippi and some in Louisiana until September, 2010.

In 1999, CR&S, via its attorney Mr. Barrow, likewise approached Aultman Tyner about representing CR&S.  Pursuant to an entry dated May 6, 1999 Mr. Barrow had a conversation with a paralegal, Suzanne D'Aquila  who worked in Aultman Tyner's Hattiesburg, Mississippi office "regarding representing Capital Rubber in Louisiana."  On June 21, 1999 Ms. D'Aquila had a conversation with Mr. Barrow "regarding insurance coverage for Capital Rubber."  In spite of CR&S's argument that The Travelers chose Aultman Tyner, it was CR&S's attorney, Ernest Barrow who contacted Aultman Tyner about the representation at its Hattiesburg, Mississippi office and discussed whether insurance coverage was available.

Furthermore, as demonstrated by the initial billing invoice, employees of Aultman Tyner, who work primarily in Hattiesburg, Mississippi performed work for CR&S in Mississippi.  Pursuant to entries on August 27, 1999, August 29, 1999 attorney Daphne M. Lancaster  whose office is in Hattiesburg, Mississippi performed work for CR&S and contacted Ben Sheeley, who was in Aultman Tyner's Gulfport, Mississippi office regarding attending depositions for CR&S.

Attorneys from Aultman Tyner's Mississippi offices also traveled to Louisiana. For example Ben Sheeley and Kyle Moran traveled from Gulfport to Louisiana and attended depositions.  Furthermore, both attorneys later prepared deposition summaries at their Gulfport, Mississippi offices.  It is apparent that numerous contacts concerning the representation of CR&S throughout the years were had with attorneys in Aultman Tyner's

12

Mississippi office regarding the representation. Additionally, all billing was done out of the Mississippi office, and all checks for representation of CR&S were sent to the Mississippi office.

The Mississippi Appellate Courts have held that a parties' agreement that an oral contract for goods to be manufactured in Mississippi for sale to the defendant is sufficient to support a finding that there was a contract to be performed in part in Mississippi. *American Cable Corporation v. Trilogy Communications, Inc.*, 754 So. 2d 545, 549 (Miss. App. 2000) (citing *Murray v. Huggers Manufacturing, Inc.* 398 So. 2d 1323, 1324 (Miss. 1981)). In *American Cable*, a non-resident corporation entered an oral agreement with a Mississippi resident to provide communications materials for use at Alabama work sites. The Court determined that even though the non-resident corporation claimed it only placed one order, the non-resident was amenable to suit under the long arm statute. In the present case, CR&S contracted orally with a Mississippi corporation to perform services which occurred, at least in part, in Mississippi in its defense of cases in Louisiana. As such, Aultman Tyner has made a *prima facie* case that CR&S is subject to the Mississippi long-arm statute.

### The Doing Business Prong

Additionally, to the extent that Aultman Tyner asserts that CR&S was doing business in Mississippi:

> The Supreme Court of Mississippi holds that in order to assert jurisdiction under this aspect of the long arm statute: (1) the nonresident defendant must purposefully do some act or consummate some transaction within the state; (2) the cause of action must arise from or be connected with such act or transaction; and (3) the assumption of jurisdiction by Mississippi must not offend traditional notions of fair play and substantial justice.

13

*Cycles Limited v. W. J. Digby, Inc.*, 889 F.2d 612, 620 (5th Cir. 1989) (other citations omitted).

The court finds that the first element of "doing business" is satisfied because CR&S purposefully engaged in the acts set out above relating to contractual services with and payment therefor to Aultman Tyner in Mississippi.  Thus, there were contracts between Aultman Tyner and CR&S consummated in Mississippi and part of the contract (negotiation of and payment for the services) was completed in Mississippi.

The court finds that Aultman Tyner has shown a *prima facie* case that there is jurisdiction under the doing business prong

**Due Process/Minimum Contacts**

The doing business prong of the Mississippi long-arm statute bears a certain resemblance to the minimum contacts requirement under the due process analysis.  Having established that service of process under the Mississippi long-arm statute was appropriate, the Court must consider whether the exercise of jurisdiction by this Court comports with the due process clause of the 14th Amendment and the traditional notions of substantial justice and fair play.  *See, Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162 (5th Cir. 1985).

The Fifth Circuit has held that

[t]he exercise of personal jurisdiction over a nonresident will not violate due process principles if two requirements are met.  First, the nonresident defendant must have purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that forum state.  *International Shoe Company v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945), *Bullion*, 895 F.2d at 216.   And second, the exercise of jurisdiction over the nonresident defendant must not offend "traditional notions of fair play and substantial justice."  *Asahi Metal Industries Company v. Superior Court*, 480 U.S. 102, 113, 107 S. Ct. 1026,

14

1033, 94 L. Ed. 2d 92 (1987), (citing *International Shoe*, 326 U.S. at 316, 66 S. Ct. at 158).

*Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

The Fifth Circuit has also determined that the minimum contacts inquiry is further subdivided into those contacts which give rise to specific personal jurisdiction and those which give rise to general personal jurisdiction.

> Specific jurisdiction is appropriate when the nonresident defendant's contact with the forum state arise from, or are directly related to, the cause of action. (citations omitted). General jurisdiction, however, will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contact with the forum state are both continuous and systematic. (citations omitted).

*Wilson v. Belin*, 644 F.2d at 647. Further,

> if a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the "fairness" prong of the jurisdictional inquiry is satisfied. (citations omitted). The Supreme Court has stated that the "fairness" of requiring a nonresident to defend a suit in a distant forum is a function of several factors, including "the interest of the forum state."

*Id.*

The factors which have been enunciated by the Supreme Court to be considered in the fairness inquiry are:

> [T]he burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of the controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies."

*Id.* at fn. 3.

"When a nonresident defendant takes purposeful and affirmative action, the effect of which is to cause business activity, foreseeable by the defendant in the forum state, such action by the defendant is considered a minimum contact for jurisdictional purposes. *Mississippi Interstate Express Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982). Courts have continued to find that the initiation of contact by the defendant to be of considerable importance. *Command-Aire Corp. v. Ontario Mechanical Sales and Serv. Inc.*, 963 F.2d 90, 94-95 (5th Cir. 1992). In this instance, it was Ernest Barrow, attorney and agent of CR&S who initiated contact with Aultman Tyner in Mississippi, to secure their representation and such action is certainly "minimum contact" for jurisdictional purposes.

The Mississippi Court of Appeals has held that minimum contacts sufficient for suit in Mississippi exist when a buyer contacted a Mississippi seller and requested a credit line, submitted balance sheet and trade reference sheet, buyer contacted seller and placed order for materials, invoices sent by seller to buyer contained forum selection clause and buyer agreed to mail payment checks into forum state. *American Cable,* 754 So. 2d at 550. In *American Cable* the Mississippi Court noted that " [i]t is the purposefulness of the decision that is important and not the physical presence of the defendant in the state." *Id. See also First Mississippi Corporation v. Thunderbird Energy, Inc.*, 876 F. Supp. 840 (S.D. Miss. 1995) (finding nonresident defendants purposefully availed themselves of privilege of conducting activities within Mississippi, satisfying due process requirements for exercise of personal jurisdiction by negotiating with Mississippi corporation, agreeing that various payments were to be made in Mississippi and by stipulating in forum selection clause in escrow agreement that any action would be commenced in Mississippi.)

16

Mississippi Courts have determined that even less extensive contacts were "minimum contacts."  For example, jurisdiction was found where a Mississippi insurance company sued an Alabama attorney and his client for breach of a settlement agreement, the attorney and his client negotiated from an out-of-state office and made two telephone calls and wrote two letters to Mississippi.  *Horne v. Mobile Area Water & Sewer System*, 897 So. 2d 972, 981 (Miss. 2004) (citing *Medical Assurance Company of Mississippi v. Jackson*, 864 F. Supp. 576, 577 (S.D. Miss. 1994)).  The Court found that "specific jurisdiction" was satisfied "by actions, or even just a single act, by which the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Jackson*, 864 F. Supp. at 579 (citing *Ruston Gas Turbines Inc. v. Donaldson Co., Inc.*, 9 F.3d 415 (5ᵗʰ Cir. 1993)) .  The Court noted that "physical presence in the state is not a prerequisite to the valid exercise of personal jurisdiction."  *Id.* at 579 (citing *Brown v. Flowers Indus. Inc.*, 688 F. 2d 328 (5ᵗʰ Cir. 1982)(internal citations omitted)).

In *Vig v. Indianapolis Life Ins. Co.*, 384 F. Supp. 2d 975, 980 (S.D. Miss. 2005) the Court held that jurisdiction was appropriate over nonresident attorneys who generated a form opinion letter which was sent to their client in California, which in turn forwarded the letter to trust participants in Mississippi, when they knew and intended that the letter would be sent to a physician in Mississippi.  The Court determined that it was well established that even a single purposeful contact was sufficient to satisfy the due process requirement of minimum contacts when the cause of action arises from the contact.  *Id.* (citing *Gardner v. Clark*, 101 F. Supp. 2d 468, 476 (N.D. Miss. 2000) (citing *Brown v. Flowers Indus., Inc.*, 688 F. 2d at 333-34)).  In *Vig*, the Plaintiff's claims were based entirely on an opinion letter,

17

and while it was not mailed to Mississippi, it was directed to Mississippi as it was addressed to a Mississippi recipient with the expectation that it would be sent to a California companies' prospective client in Mississippi.  *Id*. As such the Court determined the "defendants did purposefully avail themselves of Mississippi laws."  *Id*.

In this litigation, CR&S contacted a Mississippi law firm and requested representation.  Invoices for services were sent from Mississippi to The Travelers, pursuant to agreement between The Travelers and CR&S, and payments made on behalf of CR&S were sent to Mississippi.  While CR&S did not actually tender payment for services rendered, it intended that Aultman Tyner, a Mississippi corporation, handle its defense, and that Travelers tender payment to Aultman Tyner in Mississippi.  Additionally, over the years representatives of CR&S engaged in many discussions regarding their defense with Aultman Tyner employees in Mississippi.  Based on this, CR&S has the "minimum contacts" necessary for jurisdiction by a Mississippi Court.

### *Forum non conveniens*

Finally, CR&S argues that even if personal jurisdiction is proper in this forum, the case should nevertheless be transferred to the Middle District of Louisiana pursuant to 28 U.S.C. § 1404(a), for the convenience of parties and witnesses and in the interest of justice.  Aultman Tyner argues that CR&S has not met its burden to prove Louisiana is a more convenient forum.  While CR&S may have witnesses in Louisiana, Aultman Tyner contends that its witnesses, and documents related to this litigation, are primarily located in Mississippi.  For example, all billing records are contained in Aultman Tyner's Mississippi office.

18

Twenty-eight U.S.C. §1404(a), provides: "For the convenience of parties and witnesses, and the interest of justice, a district court may transfer any civil action to any other district or division in which it might have been brought."  The law of venue is well settled.  The Court must weigh several factors in arriving at a decision as to whether or not to transfer under §1404(a).  The factors which the Court must consider will, of necessity, vary from case to case.  The Supreme Court addressed this issue and held that;

> Important considerations are the relative ease of access to sources of proof, the availability of compulsory process for the attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed.2d 1055 (1974) (quoting *Koehring v. Hyde Construction Company*, 324 F.2d 295, 296 (5th Cir. 1963).

Where Plaintiff chooses to file suit, while only one factor to be considered, is held to be "highly esteemed", and entitled to great weight, especially if the forum he chooses is in the district where he resides.  *Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 651 F.Supp. 623, 628 (S.D.Miss. 1986), and cases cited therein.  The Plaintiff's choosing to file his suit in this forum has placed the burden on defendants to demonstrate why that forum should be changed.  *See Time, Inc. v. Manning*, 366 F.2d 690 (5th Cir. 1966).      A defendant who moves for a transfer under §1404(a) is required to show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by the transfer.  *Sorrels*, 651 F.Supp. at 629, (quoting 15 Wright, Miller & Cooper, Federal Practice and Procedure §3849, at 409 (1986)).   Section 1404(a) provides for the transfer to a forum which is more convenient, not to a forum which is equally convenient or inconvenient.  *Sorrels,* 651 F. Supp. at 630 (quoting *Van Dusen v. Barrack*,

376 U.S. 612, 646, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964)).  Hence, transfer will be refused where it would operate merely to shift inconvenience from one party to the other. *Sorrels*, 651 F. Supp. at 630 (quoting *Darby Drug Co. v. Zlotnick*, 573 F.Supp. 661, 664 (E.D.N.Y. 1983)).

This Court has held that the convenience of party and non-party witnesses is the most significant factor in considering a §1404(a) transfer motion.  *Paul v. International Metals Corp*, 613 F.Supp. 174, 179 (S.D. Miss. 1985).  In this regard, the Defendants are required to clearly specify the key witnesses and make a general statement of what their testimony will cover.  *Sorrels*, 651 F.Supp. at 629.  While asserting that several key witnesses will likely be Louisiana residents, CS&R has not furnished the Court with sufficient specific names or statement as to their expected testimony.


IT IS THEREFORE ORDERED AND ADJUDGED that the defendant's Motion for Stay and/or to Dismiss or in the Alternative to Transfer **[#3]** is Denied.

IT IS FURTHER ORDERED AND ADJUDGED that the parties shall contact Magistrate Judge Parker within ten days of this order for the entry of a Case Management Order.

SO ORDERED AND ADJUDGED this the 21st day of January, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE